UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL R. HOMCHICK,

    Plaintiff,

    v.

ALLSTATE INSURANCE COMPANY,

    Defendant.

Case No.  C04-5639RJB

ORDER DENYING ALLSTATE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the court on Defendant Allstate Insurance Company's Motion for Partial Summary Judgment (Dkt. 30). The court has reviewed all documents filed in support of and in opposition to the motion and has reviewed the file herein.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Daniel Homchick, was involved in an auto accident on December 16, 1995, with an uninsured motorist. He did not report any injuries to the police at the scene of the accident. Dkt. 28-2 at 3-4. In January of 1996, he sought medical treatment for back, neck, and shoulder pain. Dkt. 28-2 at 6.

Mr. Homchick had Underinsured Motorist (UIM) coverage with Allstate, whose company slogan is, "You're in good hands with Allstate." Allstate opened an Underinsured motorist claim after the accident. Allstate closed that claim in August of 1997 and reopened it when Mr. Homchick contacted Allstate in 1999 to report that he was experiencing shoulder pain and intended to undergo surgery as recommended by his orthopedic specialist. Dkt. 28 at 3. On

ORDER - 1

December 14, 1999, Allstate offered Mr. Homchick $7,500.00 to settle his claim. Mr. Homchick refused the offer, secured legal counsel, and requested that his claim be arbitrated. Dkt. 28-3 at 11. On October 10, 2002, the parties participated in an arbitration hearing, during which Allstate allegedly characterized Mr. Homchick as an "opportunist." Dkt. 31-2 at 24, Dkt. 29-4 at 21. The arbitration panel found causation and awarded Mr. Homchick $695,000. *Id.* Mr. Homchick's Underinsured Motorist policy limit was $100,000.

Allstate issued a check for $100,000 payable to Mr. Homchick and his attorney. Dkt. 32 at 1. Allstate forwarded the check to Scott Blinks, attorney for Allstate, who was out of the state at the time. *Id.* Mr. Blinks was notified of the check's arrival while out of state. He instructed his staff to mail the check in his absence using the same letter he had used when he forwarded a settlement check to Mr. Homchick's son Jacob. *Id.* at 2.

On October 31, 2002, Mr. Homchick's attorney (Michael Spencer) wrote a letter to Mr. Blinks, objecting to the inclusion of a Hold Harmless form and a Release in the mailing of the $100,000 check. Dkt. 32 at 2. The forms had been forwarded to Jacob when Jacob and Allstate settled that claim. Dkt. 32 at 2. Mr. Blinks called Mr. Spencer to apologize for the error and clarified that it was not his intention to send the forms. *Id.* The letter also notified Mr. Blinks that Mr. Spencer had filed motions for confirmation of the arbitration and seeking judgment in the amount of the full arbitration award on the grounds that Allstate's actions constituted bad faith. Dkt. 40 at 1.

On November 5, 2002, Mr. Spencer's office sent another letter stating that the plaintiff was willing to have judgment entered for only $100,000 so long as the entire award was confirmed and the judgment made clear that the plaintiff was reserving his claims for bad faith.

After the $100,000 check was mailed, Mr. Homchick filed a Motion for Confirmation of the Arbitration Award, Motion to Enter Judgment, Notice of Hearing, and Proposed Judgment. The court entered an Order Conforming the Arbitration Award in the amount of $695,000, but judgment was entered for $100,000. Dkt. 31-2 at 8-11. Below the judge's signature is a handwritten note stating, "The entry of this judgment does not include any claims plaintiff may

ORDER - 2

have against Allstate, either contractual or in tort, or any other claims." *Id.* at 11. This note was already written on the proposed judgment at the time the state court heard oral argument on the motions. The note was discussed at oral argument. Dkt. 40, Exh. 25 at 12. Also at oral argument, Mr. Spencer twice stated his intention that the judgment not bar future claims against Allstate. *Id.* at 9, 10. Mr. Blinks did not object to the form of the judgment.

On December 12, 2002, Irene Hecht sent a letter to Mr. Spencer on behalf of Allstate seeking to clarify that the use of the term "contractual" was in error because Allstate had already paid the full amount of the policy limits. Dkt. 40, Exh. 27. On December 16, 2002, Mr. Spencer responded by letter, stating that he did not believe that the handwritten note was erroneous and disagreed with Allstate's interpretation. Dkt. 31, Exh. F.

Allstate appealed the judgment on two grounds: (1) The trial court lacked jurisdiction to confirm the arbitration award in excess of the policy limits; and (2) The handwritten note was an erroneous conclusion of law because the arbitrators had not addressed whether Mr. Homchick would be entitled to a second claim for Underinsured motorist benefits. Dkt. 31, Exh. G at 19. Before filing an opposing brief, Mr. Spencer agreed to Allstate's interpretation of the handwritten portion of the judgment. Dkt. 31, Exh. H at 19-20.

The plaintiff's complaint brings six claims: (1) unfair and deceptive acts in violation of the Consumer Protection Act, RCW 19.86 *et seq.*; (2) breach of duty to act in good faith; (3) failure to promptly investigate; (4) failure to effectuate a prompt, fair, and equitable settlement in good faith before being compelled to do so in arbitration; (5) compelling the plaintiff to institute arbitration proceedings to recover amounts due under an insurance contract; and (6) failure to acknowledge and act reasonably promptly upon communications. Dkt. 1 at 8. The defendant moves for partial summary judgment, based on allegations contained in an expert report prepared for the plaintiff (Dkt. 31-2 at 1-7) and in the plaintiff's answers to interrogatories (Dkt. 31-2 at 21-24).

First, Allstate contends that its alleged failure to live up to its slogan does not constitute a violation of the CPA. Dkt. 31-2 at 23-24. In his response, Mr. Homchick contends that Allstate's argument that the slogan constitutes puffery is an admission that the slogan's assurance of

ORDER - 3

reasonable and fair treatment is an exaggeration. Dkt. 36 at 15. He also contends that there are issues of material fact precluding summary judgment. *Id.*

Second, Allstate contends that even if it had portrayed Mr. Homchick as an opportunist during the arbitration proceedings, that fact does not support a claim for bad faith or violation of the CPA. Dkt. 31-2 at 23-24. It further contends that it had the right to stand in the shoes of the tortfeasor and assert any defenses available to it, and to dispute causation. Dkt. 30 at 21. In his response, Mr. Homchick contends that Allstate characterized him as a "money grabbing opportunist" to create an inference that he was lying, and not merely to dispute causation. Dkt. 36 at 16.

Third, Allstate contends that sending the Hold Harmless and Release forms to Mr. Homchick with the $100,000 check was a good faith mistake and does not constitute bad faith or a CPA violation. Dkt. 31-2 at 3. In response, Mr. Homchick contends that there is an inference of bad faith. The letter accompanying the forms differs from the letter Mr. Blinks sent to Jacob. Dkt. 36 at 11, Dkt. 40, Exh. 32 at 3 (letter sent to Jacob), Dkt. 40, Exh. 20 at 9 (letter to plaintiff). The plaintiff also contends that Mr. Blinks would have benefitted from Mr. Homchick mistakenly signing the release forms.

Fourth, Allstate contends that its appeal of the judgment confirming the arbitration award was not frivolous and does not constitute bad faith. Dkt. 31-2 at 25. Allstate contends that it did not agree to the inclusion of the handwritten note and that the note was not discussed during the state proceeding. Dkt. 30 at 9. In response, Mr. Homchick contends that the parties did discuss the note during the state proceeding, citing the transcript of the proceedings. Dkt. 36 at 13. Mr. Homchick also contends that the appeal was frivolous because the judgment barred him from making another UIM claim, rendering an appeal to preserve the "right to object to the potential assertion of a second contractual claim for UIM benefits" unnecessary. Dkt. 36 at 13, Dkt. 30 at 9.

ORDER - 4

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

ORDER - 5

### B. EXPERT REPORT AND DECLARATION

In addition to its thirteen page reply brief, Allstate filed a ten page "supplemental reply" urging the court not to consider the report and declaration of Gary Williams, the plaintiff's expert. This appears to be a motion to strike but fails to comply with Local Rule CR 7(g). Nevertheless, the court has not considered the report or the declaration of Mr. Williams because his conclusions that certain factual allegations support Mr. Homchick's claims are irrelevant to the question of whether the court should grant summary judgment for Allstate on factual allegations that are not the sole bases for Mr. Homchick's claims.

### C. PARTIAL SUMMARY JUDGMENT

Allstate moves for summary judgment on allegations Mr. Homchick makes in support of his CPA and insurance bad faith claims. This motion amounts to an attempt to exclude certain pieces of evidence by casting the allegations as distinct claims and seeking summary judgment on them. Because these allegations to not constitute "claims" upon which summary judgment may be granted, the court should deny the motion.

#### 1. GOOD HANDS SLOGAN

The plaintiff contends that Allstate's "good hands" slogan violates the CPA. Whether Allstate's slogan may support a claim for a violation of the CPA has not yet been decided by Washington courts. Allstate's motion for summary judgment cites numerous cases from other jurisdictions for the proposition that the "good hands" statement constitutes mere puffing and can be neither proved nor disproved. Mr. Homchick's response does not address this argument but instead contends that characterizing the slogan as puffing constitutes an admission that the slogan is an exaggeration. Mr. Homchick further contends that "[e]xpert testimony and the material facts in dispute require the motion be denied" without referencing the facts or testimony he believes is pertinent to this argument.

Washington's Consumer Protection Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To establish a claim for violation of the CPA, the plaintiff must prove the following elements: (1)

ORDER - 6

an unfair or deceptive act or practice, (2) occurring in the conduct of trade or commerce, (3) impacting the public interest, and (4) proximately causing injury to the plaintiff in his or her business or property. *Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 917 (2001). In order to demonstrate the requisite causal link, plaintiffs must demonstrate their reliance upon the false advertisement in purchasing the defendant's goods or services. *See Mayer v. Sto Industries, Inc.*, 123 Wn. App. 443, 458 (2004).

By moving for summary judgment on this "claim," Allstate impliedly asks the court to rule that the good hands slogan *alone* is insufficient to establish a CPA violation. Mr. Homchick does not contend that Allstate's failure to live up to its slogan is the sole basis for his claims. Rather, he asks that the jury consider Allstate's behavior in light of the advertising slogan to determine whether it rises to the level of constituting bad faith and violating the CPA. *See Coventry Associates v. American States Ins. Co.*, 136 Wn.2d 269, 283 (1998) (In assessing bad faith and CPA claims, the court noted that insurance contracts offer consumers assurances that they will be treated fairly and justly and that "good neighbor" and "good hands" advertising campaigns contribute to consumers' expectations of good faith and fair dealing.). Furthermore, the cases Allstate cites in support of its contention that the good hands slogan constitutes inactionable puffery involve different causes of action than those in Mr. Homchick's complaint. *See Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1154 (S.D.Cal. 2001) (common law fraud); *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 323-24 (E.D.N.Y. 2001) (Lanham Act, breach of express warranty, state law false advertising); *Rodio v. Smith*, 587 A.2d 621, 624 (N.J. 1991) (common law fraud, state consumer protection act). The court should deny the defendant's motion because the allegation that Allstate failed to live up to promises made in its advertising is not a separable claim upon which summary judgment may be granted.

### 2. ALLSTATE'S COMMENTS AT THE ARBITRATION PROCEEDING

Allstate moves for summary judgment on the claim that its negative characterization of Mr. Homchick during the arbitration proceeding constitutes bad faith and a violation of the CPA.

ORDER - 7

1  Allstate contends that it had the right to assert any defenses available to the tortfeasor, that it was
2  merely disputing causation, and that it never characterized Mr. Homchick as an opportunist. In his
3  response, Mr. Homchick contends that the fact that he was characterized as a "money grabbing
4  opportunist" is both evidence of bad faith and an element of his claim for emotional distress
5  damages. There are genuine issues of fact as to whether Allstate referred to Mr. Homchick as an
6  "opportunist" or a "money grabbing opportunist." This factual dispute is not a "claim" and is not
7  the sole basis for Mr. Homchick's claims. Moreover, this allegation is material to determining Mr.
8  Homchick's damages, if any, and whether Allstate acted unlawfully.

### 3. ERRONEOUS TRANSMITTAL OF FORMS

Allstate moves for summary judgment on the claim that Mr. Blinks's transmittal of the release and hold harmless forms constitutes bad faith and a violation of the CPA. Mr. Homchick urges the court to deny the motion on the grounds that he "is entitled to present the material facts at issue, and any reasonable inferences which can be drawn from those facts, to a jury in determining whether Allstate's attempt was in bad faith." Dkt. 36 at 12. Whether Mr. Blinks accidentally or purposefully instructed his staff to send the forms is not a separate claim for which summary judgment may be granted. Rather, it is a factual underpinning of the bad faith and CPA claims. This allegation constitutes a question of fact that the jury must be resolve and one that the jury may properly consider in the context of the other factual allegations to determine whether Allstate acted in bad faith and in violation of the Consumer Protection Act.

### 4. ALLSTATE'S APPEAL

Allstate moves for summary judgment on the claim that its appeal of the judgment containing a written conclusion of law was frivolous and constitutes bad faith. Mr. Homchick contends that the appeal was frivolous because it was unnecessary in order to prevent future claims for benefits under the UIM policy because the $100,000 payment satisfied the full policy limit. Mr. Homchick has provided the court with the transcript of the proceedings, which demonstrates that Mr. Spencer twice stated his intention that the judgment not serve as a bar against future claims

ORDER - 8

against Allstate. Dkt. 40, Ech. 25 at 9, 10. It also demonstrates that the handwritten conclusion of law was already on the proposed judgment, that Mr. Spencer brought the handwritten note to the attention of the court, and that Mr. Blinks responded by stating, "My primary concern is the confirmation of the arbitration award for other than the UIM policy limits." *Id.* at 12. In his deposition, Mr. Blinks contends that the state court judge did not allow him to object to the conclusion of law. Dkt. 43, Exh. A. Whether the appeal of the judgment was undertaken to burden and harass Mr. Homchick is a question of fact for the jury to resolve and weigh against other factual allegations supporting and opposing the plaintiff's claim of bad faith.

### D. CONCLUSION

Allstate's motion for summary judgment seeks to isolate factual allegations that have come to light in Mr. Williams's report and in the plaintiff's answers to interrogatories. The plaintiffs' Consumer Protection act and insurance bad faith claims do not rest upon only the allegations addressed in this motion, however. To grant the motion would effectively deprive a jury of the opportunity to hear evidence of Allstate's behavior while allowing Mr. Homchick's claims to go forward. The court should therefore deny the motion.

### III. ORDER

Therefore, it is now

**ORDERED** that Defendant Allstate Insurance Company's Motion for Partial Summary Judgment (Dkt. 30) is **DENIED**.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

DATED this 19th day of October, 2005.

*Robert J. Bryan*
Robert J. Bryan
United States District Judge