1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

DANIEL R. HOMCHICK,

10                     Plaintiff,                    Case No.  C04-5639RJB

11        v.                                         ORDER GRANTING IN PART
                                                     AND DENYING IN PART
12   ALLSTATE INSURANCE COMPANY,                     ALLSTATE'S MOTION FOR
                                                     SUMMARY JUDGMENT
13                     Defendant.

14

15        This matter comes before the court on Defendant Allstate Insurance Company's Motion for

16   Summary Judgment (Dkt. 26). The court has reviewed all documents filed in support of and in

17   opposition to the motion and has reviewed the file herein.

18                    **I. FACTUAL AND PROCEDURAL BACKGROUND**

19        The plaintiff, Daniel Homchick, was involved in an auto accident on December 16, 1995,

20   with an uninsured motorist. He did not report any injuries to the police at the scene of the accident.

21   Dkt. 28-2, Exh. A at 3-4. He contends that his left shoulder was injured at the time but that he

22   believed the pain would go away on its own and was more concerned about his son, who was also

23   involved in the accident but is not a party to this case. Dkt. 49-2, Exh. 2, 1. Mr. Homchick did not

24   suffer other injuries in his left shoulder before or after the accident. Dkt. 49-2, Exh. 5 at 6. After

25   the accident, Mr. Homchick vacationed in Arizona and was unable to seek treatment with his

26   family physician as a result. Dkt. 48 at 3. In January of 1996, he sought medical treatment from Dr.

27   Bruce Worth, his family physician, for back, neck, and shoulder pain. Dkt. 28-2, Exh. B at 6. Mr.

28
     ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR
     SUMMARY JUDGMENT - 1

Homchick also received treatment from Dr. Eric Rudd, an orthopedic surgeon, who determined that Mr. Homchick had left shoulder rotator cuff tendinitis. Dkt. 28-2, Exh. C at 7. Finally, he received physical therapy from Sky Goudey for upper back, neck, and shoulder pain. Dkt. 28 at 2. As a result of these treatments, Mr. Homchick reported a decrease in symptoms and an increased ability to perform daily activities, but he continued to experience pain in his neck and upper back. Dkt. 28-2, Ex. G at 18. Dr. Rudd concluded that permanent impairment was unlikely. Dkt. 28-2, Exh. F at 17.

Mr. Homchick had Underinsured Motorist (UIM) coverage with Allstate. Allstate opened an Underinsured motorist claim after the accident. Dkt. 28 at 3. Allstate closed that claim in August of 1997 without notifying Mr. Homchick. Dkt. 49-2, Exh. 13 at 15. Allstate reopened it when Mr. Homchick contacted Allstate in 1999 to report that he was experiencing shoulder pain. Dkt. 28 at 3.

On December 14, 1999, Allstate offered Mr. Homchick $7,500.00 to settle his claim. Dkt. 28 at 3. Mr. Homchick refused the offer. Dkt. 28-3, Exh. P at 11. Mr. Homchick's lawyer, Mr. Spencer, contacted Allstate and stated that Mr. Homchick was considering undergoing shoulder surgery. Dkt. 28-3, Exh. J at 4. Mr. Homchick's UIM file was forwarded to Susan Olson, an Allstate adjuster. On January 20, 2000, Ms. Olson requested all of Mr. Homchick's medical records and employment information. Dkt. 28 at 4. She did not receive any communication from Mr. Homchick for several months and sent two additional letters requesting the information. *Id.*

On March 9, 2000, Mr. Homchick underwent shoulder surgery. Dkt. 28-3, Exh. I at 2. Ms. Olson requested that Mr. Spencer obtain Dr. Rudd's opinion as to whether Mr. Homchick would suffer any permanent disability. Dkt. 28-3, Exh. N at 9. Allstate did not receive a response to this request. Dkt. 28 at 4. Mr. Homchick requested that his claim be arbitrated, and Allstate agreed. Dkt. 28-3, Exh. P, Q. The arbitration panel found causation and awarded Mr. Homchick $695,000. Dkt. 31-2 at 24, Dkt. 29-4 at 21. Mr. Homchick's Underinsured Motorist policy limit was $100,000.

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT - 2

Mr. Spencer filed a Motion for Confirmation of Arbitration Award and a Motion for Entry of Judgment in state court. Dkt. 31, Exh. B, C. The entire $695,000 arbitration award was confirmed, but judgment was entered for $100,000, the amount of Mr. Homchick's policy limits. *Id.* The judgment provided, "The entry of this judgment does not include any claims plaintiff may have against Allstate, either contractual or in tort, or any other claims." Dkt. 31, Exh. C at 11.

Mr. Homchick filed suit against Allstate in state court, alleging six claims: (1) unfair and deceptive acts in violation of the Consumer Protection Act, RCW 19.86 *et seq.*; (2) breach of duty to act in good faith; (3) failure to promptly investigate; (4) failure to effectuate a prompt, fair, and equitable settlement in good faith before being compelled to do so in arbitration; (5) compelling the plaintiff to institute arbitration proceedings to recover amounts due under an insurance contract; and (6) failure to acknowledge and act reasonably promptly upon communications. Dkt. 1 at 8. The defendant removed the action to this court on the basis of diversity jurisdiction. Dkt. 1 at 1.

The defendant moves for summary judgment, contending that there is no genuine dispute of material facts supporting the plaintiff's bad faith and CPA claims. Dkt. 26 at 11-12. This motion was originally noted for September 30, 2005. Dkt. 26. The defendant re-noted the motion *ex parte* twice before a response was filed. Dkt. 33 (re-noted for October 21), 45 (re-noted for October 28). Six days after the response was filed and one day before the reply was due, the defendant filed another *ex parte* notice re-noting the motion. Dkt. 52 (re-noted for November 4). To date, the defendant has not filed a reply. It is unclear whether this final notice re-noting the motion is justified or is merely an attempt to circumvent the Local Rules and take more time to craft a reply to the response. The notice re-noting the motion will therefore remain in the electronic file but will have no force or effect.

The defendant's motion makes no mention of the plaintiff's breach of contract claim, so the motion for summary judgment will be treated as a motion for partial summary judgment to dismiss only the bad faith and CPA claims.

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT - 3

# II. DISCUSSION

## A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT - 4

## B. INSURANCE BAD FAITH AND CPA CLAIMS

Insurers owe a duty of good faith to policyholders, and violation of that duty may give rise to a tort action for bad faith. *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 765 (2002). If the policyholder claims that the insurer acted in bad faith, the policyholder must produce evidence that the insurer's actions were unreasonable, frivolous, or unfounded. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 433 (2002). Whether an insurer's actions constitute bad faith is a question of fact. *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 796 (2001). Breach of the duty of good faith constitutes a *per se* violation of the Consumer Protection Act. *Tank v. State Farm Fire & Cas. Ins.*, 105 Wn.2d 381, 394 (1986)

Bad faith claims are analyzed according to ordinary tort principles: duty, breach, and damages proximately caused by the breach. *See, e.g., Safeco Ins. Co. v. Butler*, 118 Wn.2d 383, 388 (1992). If the insurer identifies a reasonable basis for its action, the reasonable basis constitutes significant evidence that the insurer did not act in bad faith and may even establish that reasonable minds could not differ that the denial of coverage was justified. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 486 (2003). The existence of a merely theoretical reasonable basis for the insurer's conduct does not end the inquiry. *Id.* The policyholder may present evidence that the insurer's alleged reasonable basis was not the actual basis for its action or that other factors outweighed the alleged reasonable basis. *Id.*

The Insurance Commissioner has promulgated regulations defining specific acts and practices that constitute a breach of an insurer's duty of good faith. RCW 48.30.010; *see* WAC 284-30-300 *et seq.*; *Tank*, 105 Wn.2d at 386. Mr. Homchick contends that Allstate engaged in four practices defined by the regulations as insurance bad faith and constituting *per se* violations of the CPA: (1) failing to promptly investigate (WAC 284-30-330(4)); (2) failing to effectuate a prompt, fair, and equitable settlement (WAC 284-30-330(6)); (3) compelling the plaintiff to institute arbitration proceedings to recover amounts owed by Allstate (WAC 284-30-330(7)); and

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT - 5

(6) failing to acknowledge and act reasonably promptly upon communications (WAC 284-30-330(2)).

### 1. Failure to Promptly Investigate

Allstate moves for summary judgment on Mr. Homchick's claim that the investigation of his claim was not reasonable or prompt. The plaintiff alleges that there are three time periods during which Allstate's investigation of his claim was unreasonable.

First, Mr. Homchick contends that Allstate's investigation of his claim between the date when his claim was reopened (July 19, 1999) and the date when Allstate offered him $7,500 (December 17, 1999). Dkt. 50 at 9. The only investigative actions Allstate contends it took during this time period were obtaining a medical authorization and requesting medical records. Dkt. 26 at 4. Allstate also ran a computer evaluation on December 14. Dkt. 49 at 1. This evaluation calculated the settlement range for Mr. Homchick's claims as $8,640 to $10,800. *Id.* A reasonable juror could find that Allstate's failure to contact Mr. Homchick's doctors or to determine whether his injury was caused by the accident before offering Mr. Homchick over $1,000 less than what was recommended by Allstate's computer evaluation constituted a failure to conduct a reasonable investigation.

Second, Mr. Homchick contends that Allstate's investigation of his claim between the date of the settlement offer and the date of Mr. Homchick's surgery (March 9, 2000) was unreasonable. During this time, Dr. Rudd's office called Allstate for preapproval of Mr. Homchick's surgery. Dkt. 49-3, Exh. 31 at 15. Allstate contends that it requested Mr. Homchick's medical records twice during this period and received no response to these requests. Dkt. 4. Mr. Homchick contends that these requests were essentially unnecessary because Mr. Homchick signed medical releases in September of 1999 allowing Allstate "complete authority to access medical records and contact the medical care providers." Dkt. 50 at 6, 11. There is a genuine dispute of material fact as to whether sending requests for medical records that went unanswered constituted a reasonable and prompt investigation of Mr. Homchick's claim.

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT - 6

1    Finally, Mr. Homchick contends that Allstate did not investigate his claim reasonably or

2  make reasonable discovery efforts after his surgery. Allstate contends that during this time, it made

3  one final attempt at receiving Mr. Homchick's medical records but received them after he had

4  undergone shoulder surgery. Dkt. 26 at 4. Allstate also contends that it requested Dr. Rudd's

5  opinion on whether Mr. Homchick would suffer permanent disability and whether the shoulder

6  accident was caused the injury. Dkt. 28 at 4-5.

7    With respect to the months leading up to the arbitration, the plaintiff contends that it was

8  unreasonable for Allstate to depose only Mr. Homchick. Dkt. 49 at 6. Allstate contends it

9  continuously sent numerous discovery requests from September of 2000 to July of 2002 in

10  anticipation of the arbitration proceeding, which was originally scheduled for August 2002. Dkt.

11  29 at 1-3. Mr. Homchick also contends that Allstate's hiring of Dr. Bradley Billington to conduct a

12  records review was unreasonable because Dr. Billington never examined or spoke with Mr.

13  Homchick and was not called to testify at the arbitration proceeding, preventing Mr. Homchick

14  from cross examining him. A reasonable juror could conclude that Allstate's actions during this

15  period were unreasonable and frivolous and did not represent a good faith attempt to promptly

16  assess Mr. Homchick's claims.

17    **2. Failure to Effectuate Prompt, Fair, and Equitable Settlement**

18    Mr. Homchick contends that Allstate's only settlement offer of $7,500 is evidence of bad

19  faith because it is significantly less than the amount awarded by the arbitration panel and because it

20  is inexplicably less than the amount determined by the computer evaluation of his claim, which Mr.

21  Homchick contends is also miscalculated because it is based upon incorrect data. Dkt. 50 at 8, 7,

22  Dkt. 49 at 1-2. Allstate asserts that Washington courts do not employ a strict comparison of the

23  settlement offer to the arbitration award to determine whether the offer was equitable. Dkt. 26 at

24  18-19. Allstate contends that the settlement offer represented a fair attempt to settle Mr.

25  Homchick's claim because there was a genuine dispute as to causation and because Allstate

26  reasonably relied upon Dr. Billington's expert opinion. Dkt. 26 at 21-23.

27

28

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR
SUMMARY JUDGMENT - 7

Allstate did not retain the services of Dr. Billington until July of 2002, but the settlement offer was made in December of 1999. Dkt. 29 at 5. Similarly, it is questionable whether Allstate was privy to much of the information it cites as disputing causation in light of the limited investigation conducted before the settlement offer was made. Finally, Allstate offers no explanation for why it offered less than the lowest settlement amount determined by the computer evaluation. *See* Dkt. 26 at 15 ("Based on the available medical records and the limited treatment Mr. Homchick had received in 1996 and early 1997, Allstate offered $7500.00."), Dkt. 49 at 1 ("[T]he evaluation indicated a settlement range from $8,640 to $10,800.").

**3. Compelling the Plaintiff to Institute Proceedings to Recover Amounts Owed**

Neither the motion nor the response expressly addresses this claim.

**4. Failure to Acknowledge and Act upon Communications**

Mr. Homchick contends Allstate failed to "substantively repl[y]" to "at least four written demands for payment of policy limits." Dkt. 51 at 11. This vague assertion, without more, is insufficient to create a genuine dispute of material fact. Moreover, there is evidence that Allstate responded to Mr. Homchick's demands by contacting his attorney. Dkt. 29 at 4, Dkt. 23-3, Exh. K, M, N at 15-15, 18, 19. The court should grant summary judgment in favor of Allstate on the claim that Allstate's failure to acknowledge and act upon communications constitutes bad faith under WAC 284-30-330(2).

**C. CONCLUSION**

There are genuine issues of material facts as to whether Allstate's investigation of Mr. Homchick's UIM claim was reasonable and whether Allstate failed to effectuate a prompt and equitable settlement. Mr. Homchick has failed to identify facts supporting the allegation that Allstate violated WAC 284-30-330(2) by failing to substantively reply to Mr. Homchick's demands that Allstate pay the policy limits, and the court should therefore grant summary judgment for Allstate on this claim.

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III. ORDER**

Therefore, it is now

**ORDERED** that Defendant Allstate Insurance Company's Motion for Summary Judgment (Dkt. 26) is **GRANTED in part** and **DENIED in part**. The plaintiffs claims based upon violations of WAC 284-30-330(2) are dismissed.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

DATED this 31st day of October, 2005.

Robert J. Bryan
United States District Judge